IN THE UNITED DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| **Jennifer McWhorter**, *Individually and as Executrix of the Estate of* Blanche Johnson, *Deceased,*<br><br>Plaintiff,<br><br>v.<br><br>**Arbor Terrace at Cascade, LLC, The Arbor Barrington Company, LLC** d/b/a The Arbor Company, **The Arbor CP, LLC, The Arbor Holding Company, LLC, Arbor Management Services, LLC, John Doe No. 1**, and **Audrienne Stevens**,<br><br>Defendants. | **CAFN:** 1:20-cv-02328-WMR |

## PLAINTIFF JENNIFER MCWHORTER'S MOTION TO REMAND

Plaintiff Jennifer McWhorter files her Motion to Remand because this Court lacks subject matter jurisdiction over her state law claims and, contrary to the Defendants claims, the Public Readiness and Emergency Preparedness Act ("PREP

Page 1 of 17

Act"), 42 U.S.C. §§ 247d-6d, 247d-6e, does not preempt Plaintiff's state law claims. The Court should remand this matter to Fulton County State Court.

## INTRODUCTION

The Defendants' sole basis for asserting federal jurisdiction is that the PREP Act completely preempts Plaintiff's state law claims. The plain language of the PREP Act belies that assertion.

The PREP Act reaches claims involving the "administration" or "use of" a covered countermeasure.  Plaintiff's theory of liability is that the Defendants' *omissions* - their <u>failure</u> to implement necessary precautions to prevent the spread of Covid-19 among residents of Arbor Terrace at Cascade -- caused the rapid spread of the virus among its employees and residents, including Blanche Johnson, who contracted Covid-19 and died on March on April 8, 2020. The PREP Act offers no basis for federal jurisdiction; therefore, the Court should remand this matter to Fulton County State Court.

## STATEMENT OF FACTS

On Dec. 31, 2019, the government in Wuhan, China confirmed that health authorities were treating dozens of cases of respiratory infections. Days later, researchers in China identified a new virus that had infected dozens of people in

Asia. (Doc. 1-1 ¶ 19.)  That virus is now known as the Coronavirus or Covid-19. (Doc. 1-1 ¶ 20.) Covid-19 is an infectious virus that attacks the respiratory systems of its human hosts. (Doc. 1-1 ¶ 21.)

On January 30, 2020, amid thousands of new cases of Covid-19 infections in China, a public health emergency of international concern was officially declared by the World Health Organization ("WHO"). (Doc. 1-1 ¶ 24.) On February 28, 2020, the first coronavirus patient died in the United States, as the number of global cases rose to nearly 87,000.  (Doc. 1-1 ¶ 25.)  By that time, it was well established that elderly people and people with compromised immune systems were particularly susceptible to serious complications and death from Covid-19. (Doc. 1-1 ¶ 22.)

Arbor Terrace at Cascade is a senior citizen's independent and assisted living facility located in the southwest Atlanta area of Fulton County, Georgia. (Doc. 1-1 ¶ 12.)  As the virus found its way to the United States, Arbor Terrace owed a duty to its residents, who were all elderly people, some with compromised immune systems, to exercise ordinary care keeping the premises and approaches to the facility safe from infection. (Doc. 1-1 ¶ 38.)

Arbor Terrace failed to exercise ordinary care to keep the premises and approaches safe by failing to implement and enforce necessary common-sense

precautions to prevent the spread of Covid-19 among Arbor Terrace's residence and staff. (Doc. 1-1 ¶ 39.) Although Arbor Terrace announced purported restrictions on visitation and contact among residents on March 11, 2020, Arbor Terrace failed to enforce those restrictions. (Doc. 1-1 ¶ 26, 28(c).) To make matters worse, employees routinely failed to wear Personal Protective Equipment and asymptomatic staff who had been exposed to Covid-19 continued to work at the facility. (Doc. 1-1 ¶ 28(a) & (b).)

In March of 2020, Blanche Johnson, who was 97 years old, resided in the assisted living section of Arbor Terrace. On March 26, 2020, she was transported to Piedmont Hospital an admitted with a low-grade fever. Mrs. Johnson tested "positive" for Covid-19. Her condition deteriorated as she battled the virus and on April 8, 2020 Mrs. Johnson died from complications of Covid-19.

Her infection and death were not an isolated incident at Arbor Terrace. As a direct and proximate cause of Arbor Terrace's grossly negligent response to the pandemic at least 34 staff members tested positive for Covid-19. By April 6th, 29 residents had contracted Covid-19. At least 15 of those residents have since died due to complications from Covid-19. (Id. at ¶ 33.)

## ARGUMENT AND CITATION OF AUTHORITIES

"A removing defendant bears the burden of proving proper federal jurisdiction." *Leonard v. Enter. Rent a Car*, 279 F.3d 967, 972 (11th Cir. 2002). "If the court determines at any time that it lacks subject matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3). "As a general rule, absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). A rare exception to the general rule exists in those instances where a federal statute completely pre-empts the state-law cause of action. *Id.* at 8; *see Cmty. State Bank v. Strong*, 651 F.3d 1241, 1460 n.16 (11th Cir. 2011)("Complete preemption is a rare doctrine that entirely transforms a state-law claim into a federal claim, regardless of how the plaintiff framed the legal issue in his complaint"). The Defendants have failed to meet their burden of proving that this case falls within the rare "complete pre-emption" exception to the general rule.

    A. THE PREP ACT'S PLAIN AND UNAMBIGUOUS LANGUAGE EXTENDS IMMUNITY SOLELY TO ENTITIES AND INDIVIDUALS WHO AFFIRMATIVELY ADMINISTER OR USE ACTIVE COUNTERMEASURES.

A straightforward application of the rules of statutory construction determines the outcome here. The PREP Act's plain and unambiguous language, together with

the larger statutory scheme, makes clear that the PREP Act does not extend immunity to entities and individuals who fail to properly implement, administer, or use available countermeasures.

Any question of statutory interpretation begins with an examination of the text of the statute to determine whether its meaning is clear. *Harry v. Marchant,* 291 F.3d 767, 770 (11th Cir.2002) (en banc). Our courts "presume that Congress said what it meant and meant what it said." *Id.* (quotation omitted). Whether a statutory term is unambiguous does not just depend on dictionary definitions of its component words; instead, "[t]he plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341, 117 S.Ct. 843, 846, 136 L.Ed.2d 808 (1997). The Court analysis "must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." *Animal Legal Defense Fund v. U.S. Dept. of Agriculture*, 789 F.3d 1206, 1215 (11th Cir. 2015) (citations omitted). Alongside these traditional components of statutory construction, there is one rule that controls here: "**Where Congress knows how to say something but chooses not to, its silence is controlling**." *Id.* at 1217. (emphasis added).

The Act's immunity provision provides that,

> Subject to the other provision of this section, a *covered person* shall be immune from suit and liability under Federal and State law with respect to *all claims for loss* caused by, arising out of, relating to, or resulting from the *administration to* or *the use by* an individual of a *covered countermeasure* if a declaration under subsection (b) has been issued with respect to such countermeasure.

42 U.S.C. § 247d-6d(a)(1)(emphasis supplied).[1] The Act extends immunity only to claims arising from the "administration" of a covered countermeasure by a "covered person" or the "use of" a covered countermeasure by an "individual." The language is plain and unambiguous, and it says nothing about claims arising from a covered person's <u>failure</u> to administer a countermeasure to an individual or failure to make a countermeasure available for use by an individual.

Congress made the "scope" of PREPA's immunity provision clear in §279d-6d(a)(2)(B).

> The immunity under paragraph (1) applies to any claim for loss that has a *causal relationship* with the *administration to* or *use by* an individual of a covered countermeasure, including a causal relationship with the "design, development, clinical testing or investigation, manufacture,

---

[1]For purposes of this Motion *only*, Plaintiff assumes that the Defendants would properly be classified as "covered person(s)" under the Act. Plaintiff's reserve the right to raise the issue later in this litigation if the evidence calls into question whether the Defendants meet the statutory definition of "covered person(s)."

> labeling distribution, formulation, packaging, marketing, promotion, sale, purchase, donation, dispensing, prescribing, administration, licensing, or use of such countermeasure.

This provision reinforces that the Act is meant to only reach claims causally related to the "administration" or "use" of a covered countermeasure. The Act's preemption clause includes identical language. § 247d-6d(b)(8)(A) & (B). Congress is familiar with the bedrock tort principle that acts <u>or omissions</u> may give rise to a cause of action, had Congress intended to extend the PREP Act to such claims, it would have been easy enough to do.[2] See *Animal Legal Defense Fund*, *supra*.

While the Act does not define the term "administration," the Secretary of Health and Human Services did so on March 17, 2020. Exercising his authority under the PREP Act, the Secretary issued a Declaration "to provide liability immunity for activities related to medical countermeasures against COVID-19."[3] The Declaration stated:

> Administration of a Covered Countermeasure means *physical provision* of the countermeasures to recipients, or activities and decisions directly relating to public and private delivery, distribution, and dispensing of the countermeasures to recipients;

---

[2] For example, Congress could have included the following clause, "or failure to administer to or make available for use by" an individual.

[3] *Declaration Under the Public Readiness and Emergency Preparedness Act for Med. Countermeasures Against COVID-19*, 85 FRD 15198 (Mar. 17, 2020).

> management and operation of countermeasure programs; or management and operation of locations for purpose of distributing and dispensing countermeasures.
>
> The definition of "administration" extends only to *physical provision* of a countermeasure to a recipient, such as vaccination or handing drugs to patients, and to activities related to management and operation of programs and locations for providing countermeasures to recipients, such as decisions and actions involving security and queuing, but only insofar as those activities directly relate to the countermeasure activities.

85 FRD at 15200. Plaintiff's claims have nothing to do with the *physical provision* of countermeasures by the Defendants to Earnestine Mann or any resident at Arbor Terrace Cascade. Furthermore, Plaintiff's claims have nothing to do with the operation of management of a program for "providing countermeasures to recipients;" Plaintiff's claims related to living conditions in a facility "operated and managed" by the Defendants as a residential facility for senior citizens.

In two recent decisions interpreting the reach of the PREP Act, other District Court judges have concluded that the Act does not extend to claims arising from the failure to take preventative measures to stop the spread of COVID-19. *See Baskin v. Big Blue Healthcare, Inc.*, No. 2:20-cv-2267-HLT-JPO, 2020 WL 4815074, at *6-8 (D. Kas. Aug. 19, 2020)(holding that the PREP Act did not apply where "drilled down, Plaintiffs allege that the decedent died of COVID-19 because Defendants

failed to take preventative measures to stop the entry and spread of COVID-19 within the facility" and remanding the case); *Estate of Maglioli v. Andover Subacute Rehab. Ctr. I*, Civ. Nos. 20-6605 (KM)(ESK) & 20-6985 (KM)(ESK), 2020 WL 476091, at *7 (D.N.J. Aug. 12, 2020) (same). This Court should reach the same conclusion and find that the PREP Act does not cover Plaintiff's claims.

    B. THE PREP ACT WAS ENACTED AS PART OF A LARGER STATUTORY SCHEME FOR THE OVERARCHING PURPOSE OF ENCOURAGING THE RAPID DEVELOPMENT, MANUFACTURE AND DISTRIBUTION OF DRUGS, VACCINES AND DEVICES NECESSARY TO COMBAT AN EPIDEMIC

The broader statutory scheme reinforces Plaintiff's interpretation of the PREP Act's plain and unambiguous language. The PREP Act was included as part of bio-defense legislation enacted in 2005 because of Congress' growing concern over the spread of the H5N1 virus.[4] The legislation provided funds "to prepare for and respond to an influenza pandemic, including the development and purchase of vaccines, antivirals, and necessary medical supplies, and for planning activities."[5] The PREP Act was designed to provided "targeted liability protection" for any

---

[4] See Department of Defense, *Emergency Supplemental Appropriations to Address Hurricanes in the Gulf of Mexico, and Pandemic Influenza Act*, 2006, Pub. L.109-148, 119 Stat. 2818 (2005).
[5] *Id*. 119 Stat. at 1786.

"manufacturer, distributor or administrator of a "covered countermeasure" – drugs, vaccines or other medical devices – used to protect Americans in the event of a pandemic, epidemic, or biological attack."[6]

Congress included the PREP Act at the insistence of pharmaceutical companies, especially vaccine manufacturers, concerned about the risk of expensive and protracted litigation in the event that persons suffered serious side effects or other negative consequences related to the "use of" covered countermeasures.[7] Thus, PREPA falls within a larger statutory scheme extending back to 1976 that reflects Congress' efforts to "strike a reasonable balance where those who are harmed will be fairly compensated and life-saving products will be available in ample supply to protect and treat as many Americans as possible."[8]

The larger statutory scheme includes the Swine Flu Act, 42 U.S.C. § 247b, passed in part to extend liability protections to manufacturers of the swine flu vaccine because those manufactures had halted production of the vaccine due to the

---

[6] Apolinsky, Joanna, Van Detta, Jeffrey, *Rethinking Liability for Vaccine Injury*, 19 CNLJLPP 537
[7] *Id.* at 67 (Senator Bill Frist declared that the PREP Act was designed to "extend[s] limited protections to manufacturers, distributers and first responders, so that life-saving countermeasures . . . will be developed, deployed and administered.")
[8] *Id.*

fear of uninsured liability.[9] It also includes the National Childhood Vaccine Injury Act of 1986, 42 U.S.C. §300aa-2 et seq., that provided liability protection to vaccine manufactures and created the Vaccine Injury Compensation Program. The larger statutory scheme reinforces that the PREP Act does not protect entities and individuals who *fail to act* to protect persons to whom they owe a duty of care; it only confers immunity to those that do.

Congress' decision not to cover claims arising from the *failure* to administer or use covered countermeasures is consistent with the intent of the larger statutory scheme. Congress intended to incentivize proactive responses to a pandemic. It it would make no sense to extend the same immunity to entities and individuals who *failed to act* expeditiously to a pandemic threat. It would undermine Congress' objective, rather than further it.

## CONCLUSION

For the within and foregoing reasons, Plaintiff respectfully requests that the Court remand this matter to Fulton County State Court.

---

[9]*See* "Rethinking Liability" *supra* at 71.

Respectfully submitted this 8th day of September 2020.

/s/ *Keith L. Lindsay*
Keith L. Lindsay
Georgia Bar No. 452995

*Attorneys for Plaintiff*

**EDMOND LINDSAY & ATKINS, LLP**
344 Woodward Ave SE
Atlanta, Georgia 30312
P: (404) 525-1080
klindsay@edmondfirm.com

# IN THE UNITED DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **Jennifer McWhorter**, *Individually and as Executrix of the Estate of* Blanche Johnson, *Deceased,*<br><br>Plaintiff,<br><br>v.<br><br>**Arbor Terrace at Cascade, LLC, The Arbor Barrington Company, LLC** d/b/a The Arbor Company, **The Arbor CP, LLC, The Arbor Holding Company, LLC, Arbor Management Services, LLC, John Doe No. 1**, and **Audrienne Stevens**,<br><br>Defendants. | **CAFN:** 1:20-cv-02328-WMR |

## CERTIFICATE OF COMPLIANCE

The foregoing Plaintiff Jennifer McWhorter's Motion to Reman is double spaced in 14-point Time New Roman font and complies with the type-volume limitation set forth in Local Rule 7.1.

Respectfully submitted this 8th day of September 2020.

                                               */s/ Keith L. Lindsay*
                                               Roderick E. Edmond
                                               Georgia State Bar No. 239618
                                               Keith L. Lindsay
                                               Georgia State Bar No. 452995
                                               William J. Atkins
                                               Georgia State Bar No. 027060

                                               ***Attorneys for Plaintiff***

**EDMOND LINDSAY & ATKINS, LLP**
344 Woodward Avenue, S.E.
Atlanta, Georgia 30312
(404) 525-1080 Telephone
(404) 525-1073 Facsimile
drrod4u@edmondfirm.com
klindsay@edmondfirm.com
batkins@edmondfirm.com

# IN THE UNITED DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| **Jennifer McWhorter**, *Individually and as Executrix of the Estate of* Blanche Johnson, *Deceased,*<br><br>Plaintiff,<br><br>v.<br><br>**Arbor Terrace at Cascade, LLC, The Arbor Barrington Company, LLC** d/b/a The Arbor Company, **The Arbor CP, LLC, The Arbor Holding Company, LLC, Arbor Management Services, LLC, John Doe No. 1**, and **Audrienne Stevens**,<br><br>Defendants. | CAFN**:** 1:20-cv-02328-WMR |

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date I served the foregoing **Plaintiff Jennifer McWhorter's Motion to Remand** with the Clerk of Court using the CM/ECF system, which will automatically send email notification of such filing to the following attorneys of record:

Page 16 of 17

John E. Hall, Jr., Esquire
T. Andrew Graham, Esquire
Teresa Pike Tomlinson, Esquire
**HALL BOOTH SMITH, P.C.**
191 Peachtree Street, N.E., Suite 2900
Atlanta, Georgia 30303
jhall@hallboothsmith.com
agraham@hallboothsmith.com
ttomlison@hallboothsmith.com

This 8th day of September 2020.

/s/ *Keith L. Lindsay*
Keith L. Lindsay
Georgia Bar No. 452995

***Attorney for Plaintiff***

**EDMOND LINDSAY & ATKINS, LLP**
344 Woodward Ave SE
Atlanta, Georgia 30312
P: (404) 525-1080
klindsay@edmondfirm.com