# IN THE UNITED DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| JENNIFER McWHORTER, Individually and As Executor of The Estate of BLANCHE JOHNSON, Deceased<br><br>Plaintiff,<br><br>v.<br><br><br>ARBOR TERRACE AT CASCADE, LLC; THE ARBOR BARRINGTON COMPANY, LLC D/B/A THE ARBOR COMPANY, THE ARBOR CP, LLC, THE ARBOR HOLDING COMPANY, LLC, ARBOR MANAGEMENT SERVICES, LLC, JOHN DOE NO. 1, AND AUDRIENNE STEVENS,<br><br>Defendants. | CIVIL ACTION FILE<br><br>NO. 1:20-cv-02328-WMR |

## **ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**

The Plaintiff, Jennifer McWhorter ("Ms. McWhorter"), filed this matter in Fulton County State Court. [Doc. 1-7]. Defendants ("Arbor Terrace") removed the case to this federal court. [Doc. 1]. According to Arbor Terrace, this court has subject matter jurisdiction because the Complaint asserts a claim "arising under" the Public Readiness and Emergency Preparedness Act, 42 U.S.C. §§247d-6d,

1

247d-6e ("PREP Act"). [Doc. 1 at ¶¶ 8-9]. Ms. McWhorter moved to remand the case to Fulton County State Court. [Doc. 35]. After reviewing Ms. McWhorter's motion, other pertinent matters of the record, and having heard from both parties during oral argument on September 28, 2020, the Court enters the following Order:

## I. FINDINGS OF FACT

This matter arises out of Blanche Johnson's death from COVID-19. [*See* Doc. 1-7]. Ms. Johnson contracted COVID-19 while she was a resident at Arbor Terrace at Cascade, which is an independent and assisted living facility for senior citizens. [*Id*. at ¶ 30]. Her daughter, Ms. McWhorter, filed a wrongful death lawsuit in the State Court of Fulton County, Georgia on April 23, 2020. [*Id.* at p. 1]. Ms. McWhorter contends that Arbor Terrace is liable under O.C.G.A. §51-3-1[1] because it was negligent and failed to keep its premises safe from the spread of COVID-19. [*Id* at ¶ 38].

COVID-19 is an infectious virus that attacks the respiratory systems of its human hosts. [Doc. 1-7 at ¶ 21]. On January 30, 2020, amid thousands of new cases of COVID-19 infections in China, a public health emergency of international concern was officially declared by the World Health Organization ("WHO"). [*Id*. at ¶ 24]. Pursuant to his authority under the PREP Act, the Secretary of the United

---

[1] The statute codifies the general elements of a premises liability claim. "Where an owner or occupier off land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe."

2

States Department of Health and Human Services issued a declaration on February 4, 2020. *See* 85 Fed. Reg. 15201. The Secretary "determined that the spread of SARS-CoV-2 or a virus mutating therefrom and the resulting disease COVID-19 constitutes a public health emergency." *Id.* The declaration announced that "[l]iability immunity as prescribed in the PREP Act and conditions stated in this Declaration is in effect[.]" *Id.* at § IV.

It has been well established that elderly people and people with compromised immune systems are particularly susceptible to serious complications and death from COVID-19. [Doc. 1-7 at ¶ 22]. Arbor Terrace is a senior citizen's independent and assisted living facility located in the southwest Atlanta area of Fulton County, Georgia. [*Id.* at ¶ 12]. Plaintiff asserts that all of Arbor Terrace's residents were elderly people and some had compromised immune systems. [Doc. 35 at p. 3].

The decedent, Blanche Johnson, was 97 years old and lived in the assisted living section of Arbor Terrace. [Doc. 1-7, ¶ 16-18].[2] On March 26, 2020, Ms. Johnson was transported to Piedmont Hospital because she had developed a fever. [*Id.* at ¶ 29]. She was tested for COVID-19, and the test came back positive two days later. [*Id.* at ¶30]. She was placed on a ventilator on March 28, 2020, and

---

[2] The Complaint alleges that Ms. Johnson was a resident in the "independent" living section of Arbor Terrace; however, at the hearing on September 27, 2020, Plaintiff's counsel stated in his place that this was a scrivener's error. The parties stipulated that Ms. Johnson was, in fact, a resident in the assisted living section.

remained on a ventilator until she passed away on April 8, 2020. [*Id*. at ¶ 31].

Ms. McWhorter alleges that, as the virus spread to the United States and became more prevalent, Arbor Terrace owed a duty to its residents to exercise ordinary care by keeping the premises and approaches to the facility safe from infection. [Doc. 1-7 at ¶ 37]. Further, Ms. McWhorter claims that the "Defendants failed to exercise ordinary care to keep the premises and approaches safe by failing to take and enforce . . . precautions designed to prevent the spread of COVID-19 among Arbor Terrace's [residents] and staff." [*Id*. at ¶ 38]. Ms. McWhorter's specific allegations related to Arbor Terrace's negligence are that (1) Arbor Terrace's staff failed to wear Personal Protective Equipment, (2) its asymptomatic staff who had been exposed to Covid-19 continued to work at Arbor Terrace, and (3) it failed to restrict outside visitation."[3] [*Id*. at ¶ 28].

On its face, Ms. McWhorter's well-pleaded Complaint alleges claims under Georgia law for negligence and gross negligence, sounding in premises liability, wrongful death and punitive damages. [*See* Doc. 1-7]. The Complaint does not explicitly reference any federal law claim or anticipate any potential defense under federal law. [*See id*.]. It does not directly reference any "covered countermeasures," as that term is defined in the PREP Act, and it does not

---

[3] While Arbor Terrace did announce its intentions to impose certain restrictions on "outside visitation and contact among residents due to COVID-19," it allegedly failed to comply with such restrictions. [Doc. 1-7 at ¶¶ 26, 28].

4

affirmatively allege that Arbor Terrace "supervised or administered a program with respect to the administration, dispensing, distribution, provision or use of a security countermeasure," including by providing a "facility to administer or use a covered countermeasure[.]" 42 U.S.C. §247d-6d(i)(6).

## II.  CONCLUSIONS OF LAW

A defendant may remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction[.]" 28 U.S.C. §1441(a).  District courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. §1331. Because federal courts are courts of limited jurisdiction, "federal courts should proceed with caution in construing . . . statutory provisions dealing with their jurisdiction." *Univ. of South Alabama v. Am. Tobacco Co.*, 168 F.3d 405, 409 (11th Cir. 1999) (citation omitted).  "Accordingly, when a federal court acts outside its statutory subject-matter jurisdiction, it violates the fundamental constitutional precept of limited federal power.  Indeed, such an action unconstitutionally invades the powers reserved to the states to determine controversies in their own courts." *Id.* at 409-10. (citations omitted).  As removal raises these "significant federalism concerns . . . all doubts about jurisdiction should be resolved in favor of remand to state court." *Id.* at 411.

A party's right to remove a civil action is "determined according to the plaintiff's pleading at the time of the petition for the removal." *Pullman Co. v.*

*Jenkins*, 305 U.S. 534, 537 (1939).  The "well-pleaded complaint" rule dictates that a plaintiff is ordinarily entitled to its chosen state-court forum so long as its complaint does not allege a federal claim on its face. *See Caterpillar Inc., et al v. Williams*, 482 U.S. 386, 392 (1987).  A basis for removal does not form even if a plaintiff alleges some anticipated defense to their cause of action – including the preemptive effect of a federal statute – and asserts that the defense is invalidated by some provision of the Constitution of the United States. *See Beneficial Nat. Bank v. Anderson*, 539 U.S. 1, 6 (2003). *See also Caterpillar Inc.*, 482 U.S. at 393 ("a case may *not* be removed to federal court on the basis of a federal defense, including the defense of pre-emption, even if the defense is anticipated in the plaintiff's complaint, and even if both parties concede that the federal defense is the only question truly at issue").  Therefore, the general rule is that "absent diversity jurisdiction, a case will not be removable if the complaint does not affirmatively allege a federal claim." *Anderson*, 539 U.S. at 6.

Complete preemption, however, is an exception to the well-pleaded complaint rule. *See Cmty. State Bank v. Strong*, 651 F.3d 1241, 1260 n.16 (11th Cir. 2011).  Complete preemption may serve as a basis for subject matter jurisdiction if a federal statute (1) occupies a field of law so completely that it "entirely transforms a state-law claim into a federal claim, regardless of how the plaintiff framed the legal issue in his complaint," and (2) creates a federal cause of action designed to displace all state claims. *Id.  See also Anderson*, 539 U.S. at 8

6

("In the two categories of cases where this Court has found complete pre-emption . . . the federal statutes at issue provided the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action"). Arbor Terrace, who bears the burden of proving a basis for federal subject matter jurisdiction, asserts that the PREP Act, under 42 U.S.C. §§247d-6d and 247d-6e, completely preempts Ms. McWhorter's state law claims. The Court disagrees.

## I.   The PREP Act

When construing the effect of the PREP Act in this case, the Court must first examine the language of the statute to determine whether it is plain and unambiguous. *Harry v. Marchant,* 291 F.3d 767, 770 (11th Cir. 2002) (en banc) ("As with any question of statutory interpretation, we begin by examining the text of the statute to determine whether its meaning is clear").   Whether a statutory term is unambiguous "is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341 (1997).   The Court "must give meaning to all the words in the statute," *Marchant*, 291 F.3d at 771, and "must not be guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and its object and policy." *Animal Legal Defense Fund v. U.S. Dept. of Agriculture*, 789 F.3d 1206, 1216 (11th Cir. 2015) (citation omitted).   The Court is not free to stray from the text, but is bound to apply it as Congress wrote it.

*See, e.g.*, *Blount v. Rizzi*, 400 U.S. 410, 419 (1971) ("It is for Congress, not this Court, to rewrite the statute.")

In pertinent part, the PREP Act provides that,

> . . . a **covered person** shall be immune from suit and liability under Federal and State law with respect to **all claims for loss** caused by, arising out of, relating to, or resulting from the **administration to** or the **use by** an **individual** of a **covered countermeasure** if a declaration under subsection (b) has been issued with respect to such countermeasure.

42 U.S.C. §247d-6d(a)(1) (emphasis added) (hereinafter the "immunity provision"). The provision that defines the PREP Act's scope provides that the immunity provision "applies to any claim for loss that has a causal relationship with the administration to or use by an individual of a covered countermeasure[.]" 42 U.S.C. § 247d-6d(a)(2)(B) (hereinafter the "scope provision"). Together, these provisions clearly and unambiguously extend immunity to covered persons only if the "claim for loss" arises from an injury or death proximately caused by a covered countermeasure that was administered to or used by an individual.

The operative phrase of the statute – "administration to or the use by" – requires *action*. *See* 42 U.S.C. §247d-6d(a)(1). Additionally, the action must involve the administration or use of a covered countermeasure. *Id.* The operative verbs are followed by prepositions "to" and "by" and an object – "an individual." *Id.* Thus, by its plain terms, the PREP Act contemplates that not every action involving the use of a countermeasure will confer immunity to a covered person.

8

To confer immunity, the action must (1) involve a countermeasure that has been either (2) administered to (administration) or taken by (use) "an individual." *Id.*

In the context of the statute, the Court finds that the plain meaning of "administration" is "the dispensing, applying or tendering of something, such as . . . medicine."[4] Here, the "something" is a countermeasure, and the countermeasure must be administered to the individual who suffered an injury causally related to the administration of the countermeasure to trigger immunity protection.

The PREP Act does not define the term "individual," so the Court determines its meaning "by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson,* 519 U.S. at 341.  Read in the specific context of the immunity provision and the broader context of the PREP Act, the Court finds that the term refers to the person or entity who suffers a loss because they were administered or used a covered countermeasure.  "Individual" appears as the object of the operative phrase "administered to or the use by" at least five times in the PREP Act. *See* 42 U.S.C. §247d-6d(a)(1), (a)(2)(B), (a)(3)(C), (a)(4)(A) & (B). Therefore, the grammatical structure of the immunity provision clearly identifies "individual" as the object of the verb phrase "administration to or the use by." 42 U.S.C. §247d-6d(a)(1).

---

[4] The American Heritage Dictionary of the English Language, (5th Ed. 2020), https://ahdictionary.com/word/search.html?q=administration.

The subject of the immunity provision is a "covered person." *Id.* When the PREP Act is read as a whole, it is clear to the Court that Congress intended to refer to an individual or entity entitled to protection as a "person." The term "person" is defined by the PREP Act to include "an individual, partnership, corporation, association, entity, or public or private corporation, including a Federal, State or local government agency or department." 42 U.S.C. §247d- 6d(i)(5). Throughout the PREP Act, "person" appears in conjunction with either "covered" or "qualified."[5] A person then, whether covered or qualified, always refers to those whom immunity extends under the PREP Act.

It is clear that the scope provision's language is entirely consistent with the immunity provision's language. It provides that the "claim for loss" must have a "causal relationship" with the "administration to or use by" an "individual" of a covered countermeasure. Compare §247d-6d(a)(1) with §247d-6d(a)(2)(B). The "individual" referred to in the scope provision is the same "individual" referred to in the immunity provision. Taken together, the immunity and scope provisions define the boundaries of immunity afforded under the PREP Act – a covered

---

[5] The term "covered person" when used with respect to the administration or use of a covered countermeasure, means – (iii) a program planner of such countermeasure; (iv) a qualified person who prescribed, administered or dispensed such countermeasure or (v) an official, agent, or employee of a person or entity described in clause (i), (ii), (iii) or (iv)." 42 U.S.C. §247d- 6d(i)(2). The term "qualified person" when used with respect to the administration or use of a covered countermeasure, means (A) a licensed health professional or other individual who is authorized to prescribe, administer or dispense use countermeasures . . . (b) a person within a category of persons so identified in a declaration by the Secretary under subsection (b). 42 U.S.C. §247d-6d(i)(8).

person may be granted immunity for only such claims for loss by an individual whom was administered or used a countermeasure.

### II. The PREP Act Does Not Grant Immunity to Arbor Terrace For Its Failure To Administer Covered Countermeasures

The Court cannot accept Arbor Terrace's argument that the PREP Act protects them from liability as long as they made some choice as to "how" they responded to the pandemic, even if that choice was to **not** take reasonable precautions to prevent the spread of COVID-19 at Arbor Terrace. [*See* Doc. 42 at pp. 2-4]. Arbor Terrace interprets "administration" and "use" to mean both the act of administering or using, and the act of **not** administering or using. [*Id.*] This interpertation is a flawed understanding of the immunity provision, and there is no support for such an interpretation in the context of the language of the PREP Act.

The Court concludes that the plain and unambiguous language of the PREP Act extends immunity to "covered persons" for claims (1) by an individual; (2) who was administered or used; (3) a covered countermeasure. In other words, the Prep Act plainly requires a causal connection between the "claim of loss" and the administration to or use of a covered countermeasure by the individual on whose behalf the claim is filed. Ms. McWhorter's well-pleaded Complaint does not allege that Ms. Johnson was ever administered or used a covered countermeasure, much less that she contracted COVID-19 because of the administration or use of a covered countermeasure. Therefore, Arbor Terrace's failure to administer or use

countermeasures does not provide it with immunity under the PREP Act.

The Court finds the reasoning of other District courts that have recently addressed this issue to be supplemental and persuasive. In *Estate of Maglioli v. Andover Subacute Rehabilitation Center I*, Case Nos. 20-6605 (KM)(ESK) & 20-6985 (KM)(ESK), 2020 WL 4671091 (D.N.J. Aug. 12, 2020), the plaintiffs claimed that the defendant (a nursing home) committed negligence in that, among other things, it *failed* to take countermeasures.  The Plaintiffs in that case asserted that "because of those failures[,] . . . the quality of the care they received fell short of what a nursing home facility should have done to protect them from infection by the coronavirus." *Id.* at *10  The district court ruled that "[s]uch claims concerning the quality of care do not fall within the scope of the [PREP Act]. *Id*.  Like the defendant in *Maglioli*, Arbor Terrace allegedly did not take the proper actions to prevent the spread of COVID-19, and thus, its failure to act does not fall within the PREP Act's scope.

Additionally, in *Baskin v. Big Blue Healthcare, Inc.*, Case No. 2:20-cv-2267-HLT-JPO, 2020 WL 4815074 (D. Kas. Aug. 19, 2020), the plaintiffs alleged that the decedent died of COVID-19 because the defendants (who operated an assisted care facility) "failed to take preventative measures to stop the entry and spread of COVID-19 within the facility." *Id*. at *6.  In finding that the plaintiffs' state law negligence claim was not preempted, the district court reasoned that "the complaint

says almost nothing about any [countermeasures] that were used, and there are no allegations that the administration or use of any of those things caused the death of the decedent. Again, the allegations are the opposite—that Defendants' failure to act caused the decedent's death." *Id*. at \*7.  Citing *Maglioli*, the district court held that "the PREP Act addresses the administration or use of covered countermeasures" and that "[t]here is simply no room to read it as equally applicable to the <u>non</u>-administration or <u>non</u>-use of covered countermeasures." *Id.* at \*8.

Even more persuasive than the above cases is *Fields v. Arbor Terrace at Cascade, et. al.*, Case No. 1:20-cv-02346-TCB (N.D. Ga. Oct. 28, 2020).  This case (1) is nearly identical to the case at bar, (2) is against the same Defendant, and (3) was recently decided by this Court.  In *Fields*, the district court ruled that the PREP Act did not grant immunity to Arbor Terrace for its failure to administer covered countermeasures. Nothing has changed since October 28, 2020 to make this Court deviate from this persuasive authority.

Construed in its totality, the provisions of the PREP Act reveal its purpose. The PREP Act is meant to encourage rapid development, distribution, administration and use of drugs and devices that may help protect the population from the effects of COVID-19. *See Maglioli*, 2020 WL 476091, at \*9.  Consistent with this purpose, the PREP Act only confers immunity to covered persons who act, not in a general sense, but under specific circumstances – when they "administer" countermeasures to individuals who then suffer an injury or loss which is

13

causally related to their "use" of the countermeasures. Defendants' proposed expansion of the PREP Act to provide immunity for inaction or failure to employ countermeasures is inconsistent with the plain language of 42 U.S.C. §247d-6d(a)(1) and (a)(2)(B) and would undermine the purpose of the PREP Act.

### III. CONCLUSION

The Court finds that Ms. McWhorter's claims do not fall within the scope of the PREP Act. Accordingly, the Court GRANTS Plaintiff's Motion to Remand and ORDERS that this matter be remanded to the State Court of Fulton County.

IT IS SO ORDERED, this 1st day of December, 2020.

_____
WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE